TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00711-CR






Frank D. Mendicino, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY


NO. 504773, HONORABLE DAVID CRAIN, JUDGE PRESIDING







 After a nonjury trial, the trial court found Frank D. Mendicino guilty of criminal 
trespass and assessed sentence at 90 days in jail and a $2,000 fine. The court suspended the
incarceration and probated $1,500 of the fine, placing Mendicino on community supervision for
one year. We will affirm the judgment.

 Mendicino was arrested for trespassing in the apartment complex where he lived. 
The trial court found that Mendicino illegally remained near the property management office after
office staff told him to leave. The only evidence at trial came in the testimony of the property
manager. (1)

 Mendicino had disagreements with the management of the apartment complex. 
Three times he parked in garage spaces not leased to him and refused to move his car when
requested. He made more than twenty complaints to the management in a seven-month period,
only about one-quarter of which the manager considered valid.

 The manager felt so threatened by Mendicino's erratic actions and manner that she
summoned the police and issued him a criminal trespass warning in April 1998. The warning
forbade Mendicino from entering the management office. The office opened off of the clubroom,
a common area open during the day and available for rental by tenants during the evenings. The
manager testified that Mendicino was prohibited from entering the common areas within the
clubhouse during office hours. She told Mendicino to limit his communication with management
to telephone calls or letters dropped through the night deposit slot.

 Mendicino altered his behavior but did not strictly comply with the trespass
warning. When he had a service request, he stood outside the office doors waving his arms until
office staff took his written complaint.

 Just over a month after the trespass warning, Mendicino brought a service request
to a side door of the clubhouse. An assistant manager took the request and told him he needed
to leave. When he did not, the manager acknowledged his request, gave him a copy of the
request, and told him to leave. Mendicino remained in the doorway, using his foot to prop open
the door that otherwise would have closed automatically. The manager testified that Mendicino
"stood inside the door of a common area to my office and obstructed people from coming in or
out and wouldn't leave. Stood there and glared at us." After forty-five minutes of Mendicino's
glaring presence, the manager called the police. When the police arrived fifteen minutes later,
Mendicino moved from the side door to a back door where he remained until police arrested him.

 By his sole point of error, Mendicino contends that the trial court erred "by ruling
on insufficient evidence provided by a non-credible witness." We will consider this a challenge
to both the legal and factual sufficiency of the evidence. When reviewing the legal sufficiency
of the evidence, we view the evidence in the light most favorable to the prosecution to determine
whether any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). When reviewing the factual
sufficiency of the evidence, we view the evidence without a presumption, but can set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). In a trial to the
court, the court as factfinder is the exclusive judge of the credibility of the witnesses and the
weight to be given their testimony. See Perry v. State, 727 S.W.2d 781, 782 (Tex. App.--Austin
1987, pet. ref'd); see also Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).

 The statute governing criminal trespass provides in relevant part:


(a) A person commits an offense if he enters or remains on property or in a
building of another without effective consent and he:


 (1) had notice that the entry was forbidden; or


 (2) received notice to depart but failed to do so.


(b) For purposes of this section:


 (1) "Entry" means the intrusion of the entire body.


 (2) "Notice" means:


 (A) oral or written communication by the owner or someone with
apparent authority to act for the owner;



Tex. Penal Code Ann. § 30.05 (West 1994 & Supp. 1999). A property owner can restrict access
to common areas of a property and can revoke prior permission to be on property. See Zarsky
v. State, 827 S.W.2d 408, 414 (Tex. App.--Corpus Christi 1992, pet. ref'd). Zarsky monthly
visited a tenant in an office complex for business purposes with the manager's consent. Zarsky,
827 S.W.2d at 414. On the day of his arrest, however, he came and stood in the complex's
parking lot near the walkway to the building and protested the performance of abortions at an
office in the complex; Zarsky was arrested for trespassing when he remained there despite the
manager's order that he leave. See id. The court held that the property manager's right to revoke
his consent to Zarsky's presence overcame the business tenant's consent, the manager's prior
consent, and Zarsky's state and federal constitutional rights to free speech. Id. at 413-14.

 Mendicino argues that he did not violate the trespass warning because he was
standing in a common area and did not "break the plane" of the door. The manager conceded that
the warning previously issued did not restrict Mendicino's right to be in the common area just
outside of the door. The manager could not remember whether he broke the plane of the
doorway. She testified, however, that he was "inside the doorway."

 Without regard to the previous warning and definition of its terms, the evidence
supports the conclusion that Mendicino committed trespass. The property owner undisputedly
owned the common area and the property managers undisputedly were authorized to act on the
owner's behalf. The managers therefore had the right to exclude persons from the property and
to regulate use of the common areas. Though Mendicino as a tenant had some right to be in the
apartment complex's common area, there is no evidence that Mendicino had the right to impair
the use of the common area by others or to impede the function of the property management
office. His presence and conduct impeded access to the office and clubhouse common area
through that door and further disrupted office functions by intimidating the staff. Two property
managers clearly told Mendicino to leave the doorway. He did not move. Whatever the meaning
of door, doorway, office, enter, or inside, Mendicino's refusal to leave the area despite notice by
the owner's agents to depart made his continued presence on that property a trespass.

 We affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: September 10, 1999

Do Not Publish

1. In his brief, Mendicino quotes extensively from the testimony of officer Robert Chody. 
Chody's testimony is not in the reporter's record in this case. Mendicino does not name the
forum in which Chody testified. Because Chody's testimony is not part of the record in this case,
we cannot consider it.


relevant part:


(a) A person commits an offense if he enters or remains on property or in a
building of another without effective consent and he:


 (1) had notice that the entry was forbidden; or


 (2) received notice to depart but failed to do so.


(b) For purposes of this section:


 (1) "Entry" means the intrusion of the entire body.


 (2) "Notice" means:


 (A) oral or written communication by the owner or someone with
apparent authority to act for the owner;



Tex. Penal Code Ann. § 30.05 (West 1994 & Supp. 1999). A property owner can restrict access
to common areas of a property and can revoke prior permission to be on property. See Zarsky
v. State, 827 S.W.2d 408, 414 (Tex. App.--Corpus Christi 1992, pet. ref'd). Zarsky monthly
visited a tenant in an office complex for business purposes with the manager's consent. Zarsky,
827 S.W.2d at 414. On the day of his arrest, however, he came and stood in the complex's
parking lot near the walkway to the building and protested the performance of abortions at an
office in the complex; Zarsky was arrested for trespassing when he remained there despite the
manager's order that he leave. See id. The court held that the property manager's right to revoke
his consent to Zarsky's presence overcame the business tenant's consent, the manager's prior
consent, and Zarsky's state and federal constitutional rights to free speech. Id. at 413-14.

 Mendicino argues that he did not violate the trespass warning because he was
standing in a common area and did not "break the plane" of the door. The manager conceded that
the warning previously issued did not restrict Mendicino's right to be in the common area just
outside of the door. The manager could not remember whether he broke the plane of the
doorway. She testified, however, that he was "inside the doorway."

 Without regard to the previous warning and definition of its terms, the evidence
supports the conclusion that Mendicino committed trespass. The property owner undisputedly
owned the common area and the property managers undisputedly were authorized to act on the
owner's behalf. The managers therefore had the right to exclude persons from the property and
to regulate use of the common areas. Though Mendicino as a tenant had some right to be in the
apartment complex's common area, there is no evidence that Mendicino had the right to impair
the use of the common area by others or to impede the function of the property management
office. His presence and conduct impeded access to the office and clubhouse common area
through that door and further disrupted office functions by intimidating the staff. Two property
managers clearly told Mendicino to leave the doorway. He did not move. Whatever the meaning
of door, doorway, office, enter, or inside, Mendicino's refusal to leave the area despite notice by
the owner's agents to depart made his continued presence on that property a trespass.

 We affirm the trial court's judgment.



 

 Bea Ann Smith, Justice